## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

WILLIAM P. LEGER, JR.,                )
No. N86167,                           )
                                      )
             Plaintiff,               )
                                      )
      vs.                             )        Case No. 15-cv-00080-SMY
                                      )
THOMAS A. SPILLER,                    )
DR. VIPIN SHAH,                       )
WEXFORD HEALTH SOURCES, INC.,         )
CHRISTINE BROWN, and                  )
"JOHN DOE" NURSES,                    )
                                      )
             Defendants.              )


## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff William P. Leger, Jr., an inmate currently housed in Pinckneyville Correctional Center. Pursuant to 42 U.S.C. § 1983, Plaintiff brings this action for deprivations of his constitutional rights with respect to the medical care he was afforded at both Pinckneyville and Menard Correctional Center.

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) Screening.– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) Grounds for Dismissal.– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).   Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit."   *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000).  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   The claim of entitlement to relief must cross "the line between possibility and plausibility.   *Id*. at 557.   At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed.   *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## <u>The Complaint</u>

According to the complaint, in November 2010, while he was housed at Menard Correctional Center, Plaintiff Leger injured his right shoulder.  He received medical treatment, but was told that follow-up care would be necessary.  Unknown medical administrators refused to authorize an MRI.

In December 2011, Plaintiff was transferred to Pinckneyville Correctional Center. During his intake interview, he informed an unidentified nurse about his shoulder injury and that follow-up care had been recommended.  The nurse indicated that all of that information was in Plaintiff's medical records.

In January 2012, Plaintiff began visiting the Pinckneyville health care unit to inquire about follow-up care for his shoulder.  He was told by unidentified medical personnel that he needed to realize that he was not the only inmate, and that he should wait to be called to the health care unit for follow-up care.

Plaintiff notes that during this period he was assigned to a top bunk, but there is no indication in the complaint that he asked any particular person for a low bunk permit.  In February 2012, Plaintiff fell from the top bunk, breaking his ribs and exacerbating his shoulder injury.  Nurses had x-rays taken and gave Plaintiff Tylenol and a low bunk permit.  They stated that there was nothing else that could be done.  Again, no follow-up care was offered for Plaintiff's painful shoulder injury.  Plaintiff's requests for additional care were to no avail.  A nurse did speak to Plaintiff, but did not do anything other than advise Plaintiff to continue to complain in the hope that he would be called to the health care unit.  Between February and July, Plaintiff's multiple requests to Dr. Shah for follow-up care were ignored, leaving Plaintiff in pain and causing his condition to worsen.  Administrative grievances were denied at all levels of the review process.

In July 2012, Plaintiff did see Dr. Shah, who only prescribed Tylenol and said he would see Plaintiff in 30 days (which apparently did not occur). Plaintiff was also scheduled for physical therapy, but his pass to go to therapy was not honored.  Finally, in October 2012, Plaintiff began physical therapy, which continued twice a week for approximately six weeks.

In April 2013 Plaintiff was referred to an outside orthopedic specialist, Dr. Richard L. Morgan, who reported that, although x-rays remained normal and Plaintiff maintained a "fairly normal" passive range of motion, an MRI revealed a complete rupture of the rotator cuff with upward migration and impingement, resulting in legitimate pain.  Dr. Morgan opined that rotator cuff repair would not help, but, if anything were done, a total reverse shoulder arthroplasty was recommended, to be followed by physical therapy.  *See* Doc. 1, pp. 40-41.  Documentation attached to the complaint indicates that Dr. Shah and/or Wexford Health Sources failed to approve surgery (*see* Doc. 1, p. 23).

Between April 2013 and October 2014 Dr. Shah prescribed various medications—including Ultram and Naproxen—but none afforded Plaintiff any pain relief.  It appears that Plaintiff continued in pain until he filed this action on January 26, 2015.

Named as defendants are:  Thomas A. Spiller, the warden of Pinckneyville; Dr. Vipin Shah, a treating physician and medical director at Pinckneyville; Wexford Health Sources, Inc., which is characterized as an insurer[1]; Christine Brown, the health care administrator at Pinckneyville; and multiple unidentified "John Doe" nurses at Pinckneyville (*see* Doc. 1, pp. 1-2).  Plaintiff asserts that Defendants violated the Eighth Amendment, as well as 55 ILCS 5/5-1002, which is an indemnification statute covering county sheriffs and deputies.  He seeks compensatory and punitive damages, and injunctive relief in the form of shoulder replacement surgery and a transfer to a prison where he can receive proper medical treatment and therapy.

Based on the allegations in the complaint, the Court finds it convenient to summarize the allegations as a single, overarching claim:

**Count 1:  Defendants were deliberately indifferent to Plaintiff's serious medical needs, in violation of the Eighth Amendment.**

No claim has been recognized related to 55 ILCS 5/5-1002, an indemnification statute covering county sheriffs and deputies.  None of the named defendants is a county sheriff or deputy.  Any such claim should be considered dismissed with prejudice.  The corollary for purposes of Section 1983—the *respondeat superior* doctrine—will be discussed below.

## Discussion

The Eighth Amendment to the United States Constitution protects prisoners from being subjected to cruel and unusual punishment.  U.S. CONST., amend. VIII. *See also Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010).   Prison officials can violate the Eighth

---

[1] Wexford Health Sources is a contract health care provider.

Amendment's proscription against cruel and unusual punishment when their conduct demonstrates "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

A medical condition need not be life-threatening to be serious; rather, it can be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). Thus, at this early juncture Plaintiff's shoulder injury appears sufficiently serious to implicate the Eighth Amendment. That, however, does not end the inquiry. The allegations span a four-year period and the treatment afforded at two different prisons, by four identified defendants and numerous unidentified nurses.

### Events at Menard Correctional Center

As a preliminary matter, because none of the defendants (including the "John Doe" nurses) are alleged to have worked at Menard Correctional Center, no claims are considered to be premised upon the events occurring between November 2010 and December 2011, when Plaintiff was housed at Menard. Any intended claims regarding the treatment afforded at Menard should be considered dismissed without prejudice.

### Events at Pinckneyville Correctional Center

Although some of the events occurring at Pinckneyville may fall outside the applicable two-year statute of limitations, at this early juncture a continuing violation cannot be ruled out (as opposed to a series of discreet events). *See*, e.g., *Devbrow v. Kalu*, 705 F.3d 765 (7th Cir. 2013) (inmate complains about pain for months, suspecting a hernia, but jail officials do not offer treatment; when Plaintiff is eventually diagnosed with a ruptured hernia and sues for deliberate indifference, the district court dismisses the case at the threshold based on the two-

year statute of limitations; appellate court reverses, finding a continuing violation, lasting as long as the defendant jail officials had the power to do something).

### Individual Liability

Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). As a general matter, a prison official may be liable "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan,* 511 U.S. 825, 847 (1994).

There are no allegations in the narrative of the complaint regarding Warden Thomas A. Spiller and Health Care Administrator Christine Brown. Merely including a defendant's name in the caption of the complaint is insufficient to state a claim. *See Ownes v. Hinsley*, 635 F.3d 950, 955 (7th Cir. 2011) (citing *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998)). And, the doctrine of *respondeat superior*—supervisory liability—is not applicable to Section 1983 actions. *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001). Plaintiff has, thus, failed to state a viable claim against Spiller or Brown in their individual capacities and they will both be dismissed without prejudice.

Insofar as Plaintiff seeks injunctive relief, Warden Spiller shall remain as a defendant in his official capacity. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out).

Proving deliberate indifference requires more than a showing of negligent or even grossly negligent behavior, the equivalent of criminal recklessness must ultimately be proved. *Farmer*,

511 U.S. at 835-37.  Case law illustrates that when medical care is at issue, a defendant's skill level and ability to act are relevant to liability.  With respect to medical professionals, erroneous treatment constituting a substantial departure from accepted medical judgment, practice, or standards may constitute deliberate indifference.  *See Gayton,* 593 F.3d at 623; *Jones v. Simek*, 193 F.3d 485, 490 (7th Cir. 1999).

Relative to Dr. Shah, physicians are entitled to deference in treatment decisions "unless no minimally competent professional would have so responded under similar circumstances." *Sain v. Wood,* 512 F.3d 886, 894–95 (7th Cir.2008); *see Duckworth v. Ahmad,* 532 F.3d 675, 682 (7th Cir. 2008).  Mere disagreement with a physician's chosen course of an inmate's medical treatment does not amount to deliberate indifference.  *See Snipes v. DeTella,* 95 F.3d 586, 591(7th Cir. 1996); *Ciarpaglini v. Saini,* 352 F.3d 328, 331(7th Cir. 2003); *Garvin v. Armstrong,* 236 F.3d 896,898 (7th Cir.2001) (Courts will not takes sides in disagreements about medical personnel's judgments or techniques). At this juncture, the claims against Dr. Shah cannot be dismissed.

A corporate healthcare provider cannot be held liable for its employees' constitutional violations simply because it is the employer.  *See Shields v. Illinois Dept. of Corrections*, 746 F.3d 782 (7th Cir. 2014); *Maniscalco v. Simon*, 712 F.3d 1139, 1145 (7th Cir. 2013) (no *respondeat superior* liability for private corporation).  However, the corporation can be liable if the plaintiff's harm is caused by its unconstitutional policy or practice.  *See Shields*, 746 F.3d at 796; *Woodward v. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 917 (7th Cir. 2004).  Although documentation attached to the complaint (Doc. 1, p. 23) reflects that Wexford did not approve the total reverse shoulder arthroplasty suggested by Dr. Morgan, there are no specific

allegations regarding Wexford Health Sources, Inc., the corporate health care provider for the prison.  Consequently, Wexford Health Sources, Inc., will be dismissed without prejudice.

Regarding the multiple unidentified "John Doe" nurses at Pinckneyville who interacted with Plaintiff, "nurses may generally defer to instructions given by physicians, 'but that deference may not be blind or unthinking, particularly if it is apparent that the physician's order will likely harm the patient.'" *Holloway v. Delaware County Sheriff*, 700 F.3d 1063, 1075 (7th Cir. 2012) (quoting *Berry v. Peterman,* 604 F.3d 435, 443 (7th Cir. 2010)).  Because Plaintiff's medical records from Menard reflected that his shoulder injury required follow-up care, and because Plaintiff was not afforded such care, the individual liability of the many nurses mentioned in the complaint cannot be parsed and thoroughly analyzed based solely on the complaint.  Therefore, the nurses shall remain as defendants, although Plaintiff will have to otherwise identify a nurse by name and amend the complaint accordingly before liability can attach to that particular nurse.

## <u>Disposition</u>

IT IS HEREBY ORDERED that, for the reasons stated, Defendants **CHRISTINE BROWN** and **WEXFORD HEALTH SOURCES, INC.**, are **DISMISSED without prejudice**.

IT IS FURTHER ORDERED that all claims against Defendant **THOMAS A. SPILLER** in his individual capacity are **DISMISSED without prejudice**; Spiller shall remain as a defendant in his official capacity.

IT IS FURTHER ORDERED that **COUNT 1**, the Eighth Amendment "medical care" claim, shall otherwise **PROCEED** against Defendants **DR. VIPIN SHAH** and the **"JOHN DOE" NURSES**.

Plaintiff has been granted pauper status (Doc. 6); accordingly, his motion for service of

summons and the complaint at government expense (Doc. 4) is **GRANTED**.  The Clerk of Court

shall prepare for Defendant **DR. VIPIN SHAH**:  (1) Form 5 (Notice of a Lawsuit and Request to

Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is

**DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to

Defendant's place of employment as identified by Plaintiff.

Service shall not be made on the unknown "John Doe" nurses until such time as Plaintiff

has identified them by name in a properly filed amended complaint.  Plaintiff is **ADVISED** that

it is Plaintiff's responsibility to provide the Court with the names and service addresses for these

individuals.

If Defendant Shah fails to sign and return the Waiver of Service of Summons (Form 6) to

the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps

to effect formal service on Defendant, and the Court will require Defendant to pay the full costs

of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If Defendant Shah no longer can be found at the work address provided by Plaintiff, the

employer shall furnish the Clerk with Defendant's current work address, or, if not known,

Defendant's last-known address.  This information shall be used only for sending the forms as

directed above or for formally effecting service.  Any documentation of the address shall be

retained only by the Clerk.  Address information shall not be maintained in the court file or

disclosed by the Clerk.

Plaintiff shall serve upon Defendant (or upon defense counsel once an appearance is

entered), a copy of every pleading or other document submitted for consideration by the Court.

Plaintiff shall include with the original paper to be filed a certificate stating the date on which a

true and correct copy of the document was served on Defendant or counsel.  Any paper received

by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant Shah is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Philip M. Frazier for further pre-trial proceedings, including consideration of Plaintiff's motion for counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to a United States Magistrate for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.   *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.   This shall be done in writing and not later than **7**

**days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: February 13, 2015**

s/ STACI M. YANDLE
**United States District Judge**