IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM P. LEGER, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 15-CV-80-SMY-RJD |
| | ) |
| KAREN JAIMET, WEXFORD HEALTH SOURCES, INC., and JOHN DOE, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff William P. Leger injured his right shoulder while incarcerated at the Menard Correctional Center in November 2010. He injured it again a year later and was eventually diagnosed with a complete rupture of his right shoulder rotator cuff.

Plaintiff filed suit on January 26, 2015, alleging that Dr. Vipin Shah was deliberately indifferent to his medical condition by in part, failing to provide surgery. The matter survived summary judgment and was set for trial on November 20, 2017 (Doc. 107). On November 17, 2017, however, the parties engaged in a settlement conference and subsequently settled this case (Doc. 116). This matter is now before the Court for consideration of Plaintiff's Motion to Enforce Settlement Agreement (Doc. 123) and Motion for Extension of Time Before Entry of Judgment (Doc. 125). For the following reasons, the Motions are **GRANTED**.

### Background

The material terms of the Settlement Agreement are that Plaintiff would receive a monetary payment and injunctive relief in exchange for a Release and confidentiality. With respect to the injunctive relief, Defendants (through Dr. Shah/Wexford) agreed to send Plaintiff for an additional

consultation with a surgeon to be evaluated for a possible surgery on his shoulder.  The parties agreed that if the doctor recommended surgery and Plaintiff agreed and was cleared for surgery, the recommendation would be followed.  In exchange, Dr. Shah would be substituted by Wexford Health Sources, Inc. as the defendant, the Settlement Agreement would remain confidential, each side would bear their own costs, the state would waive the costs of incarceration, and this case would be dismissed with prejudice.[1]  The parties have not signed a written Settlement Agreement memorializing the agreed settlement terms, but Dr. Shah has been substituted by Wexford as the defendant (Doc. 128).

In his Motion, Plaintiff sets forth the terms of the settlement including the specific dollar amount he is to receive.  He states that on November 27, 2017, he was sent to Washington University School of Orthopedic Medicine and was examined by Drs. Aaron Chamberlain (attending doctor) and Jason Codding (resident).  In their report, the doctors indicate that Plaintiff's medical history and records were documented, that he underwent a physical examination, that they reviewed x-ray images of his shoulder, and that he was assessed as having shoulder pain with a "full-thickness rotator cuff tear" (Doc. 123-1).  As to their recommendation, the doctors state, "we recommended an image-guided glenohumeral injection today" (which was administered on December 11, 2017).  They also recommend that Plaintiff should follow-up as needed (*Id.*).  There is no mention of a surgical evaluation or plan.  In the Motion, Plaintiff states that the effects of the injection have worn off and that his subsequent requests to return to the orthopedists have been rejected or ignored by the prison.

---

[1] The settlement conference was held before Magistrate Judge Reona J. Daly.  After the parties had reached an agreement, Judge Daly memorialized the material terms of that agreement through Liberty Recording.  This Court has listened to that recording.  The only portions of the recording that are not clear are the statements made by the attorney for Karen Jaimet, Assistant Attorney General Melissa Jennings (who appeared by telephone).  Those statements, however, are not relevant to the particular matter at issue before the Court, namely, the parameters of the medical evaluation.

Defendant Wexford's first response to Plaintiff's motion does not dispute the relevant representations made therein (Doc. 124). In a supplemental response (Doc. 126)[2], Wexford states that Plaintiff was sent to Dr. Chamberlain for a follow-up appointment on May 21, 2018 and that Dr. Chamberlain recommended a different type of injection ("guided subacromial injection") and referral to a physiatry for evaluation of Plaintiff's pain and related symptoms. (Doc. 126-1, p. 5). Again, there is no mention of a surgical evaluation or plan. Plaintiff was then seen by a Physician Assistant on June 29, 2018, who recommended another injection (identical to the first type) followed by physical therapy and icing of the shoulder. In a reply brief, Plaintiff reiterates that no doctor has provided a recommendation or treatment plan as to surgery.

Neither party has provided the Court with a copy of the draft Settlement Agreement. Emails exchanged between the parties reveal that while Wexford's counsel was diligent in attempting to reduce the Agreement to writing, Plaintiff's counsel failed to respond in a meaningful way.

On March 11, 2019, the parties were directed to file status reports indicating further developments in settling this matter (Doc. 129). Wexford reports that Plaintiff has been evaluated by the medical director at Pinckneyville, Dr. Meyer, (who does not appear to be an orthopedic surgeon), that he has been prescribed pain medication and a course of physical therapy, and that Plaintiff may be sent back to the orthopedic surgeon for further evaluation after he completes physical therapy (Doc. 130). Plaintiff states that he still has not been evaluated for surgery (Doc. 133).

---

[2] Local Rule 7.1(g) directs parties to seek leave of Court prior to filing a supplemental brief. In addition, this Court's Case Management Procedures requires parties to seek leave of Court prior to filing a Reply. Defendant did not seek leave of Court to file a supplemental brief and Plaintiff did not seek leave of Court to file a Reply. While the Court admonishes the parties for disregarding Local Rules and the Court's Case Management Procedures, in the interest of justice and in the interest of disposing of this matter which has gone on for far too long, it will allow and consider the filings.

## Discussion

A district court possesses the inherent or equitable power to enforce an agreement to settle a case pending before it. *Wilson v. Wilson*, 46 F.3d 660, 664 (7th Cir. 1995). Such agreements are enforceable under Illinois law if there is clearly an offer and acceptance of the compromise and a meeting of the minds as to the terms of the agreement. *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 507 (7th Cir. 2007). "The essential terms must be definite and certain so that a court can ascertain the parties' agreement from the stated terms and provisions." *Dillard*, 483 F.3d 507 (quotation marks omitted). The agreement may be summarily enforced and the Court need not examine the circumstances surrounding the settlement. *Wilson*, 46 F.3d at 667; *Newkirk v. Vill. of Steger*, 536 F.3d 771, 774 (7th Cir. 2008).

The parties agree that they have settled this matter and that the fact there is no written agreement would not prevent enforcement of the settlement.[3] The essential terms of the agreement are definite. Thus, the only question before the Court is whether Wexford fulfilled its end of the bargain. It has not.

A material term of the settlement is that Plaintiff was to be evaluated for surgery by a surgeon, preferably located in St. Louis, Missouri. Plaintiff was sent to Dr. Chamberlain, an orthopedic surgeon in St. Louis. But Dr. Chamberlain did not conduct an assessment of whether and what type of surgery was necessary and appropriate. There is no mention of a surgical option in the doctor's report, no indication of what type of surgery would be appropriate, and no mention of whether surgery was even considered and rejected as a viable option. The doctor's report is simply devoid of any indication that he actually evaluated Plaintiff for possible surgery. While Wexford claims that Plaintiff got what he wanted – a consultation with a surgeon – it is

---

[3] Because there is no dispute that an agreement was reached or as to the material terms of the agreement, no evidentiary hearing on the Motion is required.

disingenuous to claim that a consultation without a meaningful surgical evaluation is what Plaintiff wanted, and more importantly, what Defendant agreed to provide. As such, Defendant has reneged on a material term of the settlement agreement.[4]

### Conclusion

For the foregoing reasons, Plaintiff's' Motion to Enforce Settlement Agreement (Doc. 123) and Motion for Extension of Time Before Entry of Judgment (Doc. 125) are **GRANTED**. Defendant Wexford is **ORDERED** to arrange for Plaintiff to receive a proper surgical evaluation by an orthopedic surgeon, to take place within 60 days of the entry of this Order and to include whether and what type of surgery is recommended to address Plaintiff's shoulder condition.[5] Further, the parties are **ORDERED** to execute a written Settlement Agreement within 30 days of the date of this Order. **This matter shall remain on the Court's docket for 90 days during which the parties shall file a stipulation of dismissal with prejudice.**

IT IS SO ORDERED.

DATED: April 5, 2019

**STACI M. YANDLE
United States District Judge**

---

[4] The Court recognizes that Plaintiff violated the confidentiality agreement when he filed his Motion. He disclosed all the material terms of the agreement, including a specific dollar amount, when he should have filed the Motion under seal. That said, the interests of justice do not allow Defendant to escape its obligations under the circumstances. Accordingly, the Clerk of Court is **DIRECTED** to seal the Motion (Doc. 123).

[5] It goes without saying that Defendant should ensure that the doctor who evaluates Plaintiff's surgical options should be given Plaintiff's medical records relating to his shoulder condition, including Dr. Richard Morgan's records and the records from Plaintiff's subsequent medical treatment.